The Honorable Stanley Russ State Senator P.O. Box 787 Conway, AR 72033-0787
Dear Senator Russ:
You have requested an Attorney General opinion in response to the following questions:
 (1) If a property owner whose property abuts a city street petitions the city to narrow the street, can the city narrow the street based only on that property-owner's petition, or do other property owners on that street have to agree also?
 (2) If a city council decides to take action that violates state law, and a citizen wants to stop the action, is it necessary for the citizen to file a lawsuit? If so, is there a time limit for the lawsuit to be filed?
RESPONSE
Question 1 — If a property owner whose property abuts a city streetpetitions the city to narrow the street, can the city narrow the streetbased only on that property-owner's petition, or do other property ownerson that street have to agree also?
As an initial matter, I note that you have not indicated the class or population of the city in question, nor have you stated whether the street in question is in current use. As explained more fully below, the answer to your question will depend on the class and population of the city under consideration, and could depend upon whether the street is in current use.
Cities of the first and second class are given the explicit authority "to alter or change the width or extension of streets . . . and to vacate . . . such portions thereof as may not for the time being be required" for city purposes. See A.C.A. §§ 14-54-104(2) and -105(2). State law does not address the question of whether incorporated towns have a similar authority regarding the width of city streets.
As to the procedure that must be followed for narrowing a city street (i.e., how many property owners must consent), state law addresses this issue as to cities having a population of 15,000 or more, but is more limited in its guidance as to cities having a smaller population.
In cities having a population of 15,000 or more, the procedure for narrowing a city street is governed by the provisions of A.C.A. §14-301-110. That statute states:
 (a) Every city which has a population of more than fifteen thousand (15,000) inhabitants as shown by the last federal census shall have the right in all cases where a street contains offsets and sufficient property is dedicated to the offsets to:
* * *
 (2) Abandon, with the consent of the abutting property owners and any other persons directly interested, such part of the property formerly used as a street which shall not be within the line of the street as straightened.
 (b) When any person owning property abutting any part of the property proposed to be abandoned as a street shall present to the city council his petition praying that any property be abandoned as a street, the city council shall by resolution direct the city clerk to give notice by a publication one (1) time a week for two (2) weeks in some newspaper published in the county in which the city may lie. To advise the property owners affected that on a day named in the notice the council will hear the petition and determine whether the property should be abandoned as a street and whether all abutting property owners and other persons directly interested have consented to the abandonment. At the meeting named in the notice, all property owners affected shall be heard before the council, which shall determine whether the property should be abandoned and whether all abutting property owners and other persons directly interested have consented to the abandonment. The determination and finding of the council shall be conclusive unless within thirty (30) days thereafter suit is brought to review its action in the chancery court of the county where the city lies. In determining whether all abutting property owners and other persons directly interested have consented to the abandonment, the council and the chancery court shall be guided by the record of deeds in the office of the recorder of the county and shall not consider any unrecorded instrument.
 (c) If the council finds that the property should be abandoned as a street and that all abutting property owners and other persons directly interested have consented to the abandonment, the finding shall be expressed in an ordinance which shall have all of the force and effect of a judgment. Thereupon, the absolute ownership of the property abandoned shall vest in the owners of the fee simple title to the property free from the former easement of the city therein for public use as a street.
A.C.A. § 14-301-110 (emphasis added).
The above-quoted provisions clearly and unambiguously indicate that in order for a city having a population of 15,000 or more to narrow a city street, all abutting property owners and other persons directly interested must consent. The provisions appear to apply regardless of whether the street is in current use or not.
In situations where a city street has not been used by the public for a period of five years, cities of the first and second class can narrow the street, under the provisions of A.C.A. § 14-301-301 et seq. The procedure and other requirements for doing so is set forth in Sections -302 and -303. That statute states:
14-14-302. Petition to vacate — Notice of hearing.
 (a) The owners of any property abutting upon a street or alley referred to in 14-301-301, may file a petition with the city or town council requesting the council to vacate the street or alley, or a portion thereof.
 (b) The petition shall designate the street or alley, or a portion thereof, to be vacated, and there shall be filed with the petition a certified or photostatic copy of the portion of the plat filed in the office of the county recorder which shows the street or alley to be vacated, together with the lot and block numbers of each lot which abuts upon the street or alley to be vacated.
 (c) At the next regular or special meeting of the council, the council shall, by resolution, fix a day for the hearing of the petition and shall direct the city clerk or town recorder to give notice of the meeting by publication once a week for two (2) consecutive weeks in some newspaper published in the county and having a general circulation in the city or town.
(d) The notice shall:
(1) State the names of the persons who sign the petition;
 (2) State the name of the street or alley, or the portion thereof, to be vacated. If the street or alley is not named on the plat, the notice shall identify the street or alley by the abutting lot or block numbers; and
 (3) Advise all persons that on a certain day named in the notice, the council will hear and determine whether the street or alley shall be vacated.
A.C.A. § 14-301-302.
14-301-303. Hearing — Written consent of abutting owners.
 At the meeting of the council as designated in the notice, any property owner affected by the petition shall be heard. The council shall then determine whether, from the standpoint of public interest and welfare, the street or alley should be vacated as proposed in the petition. However, no street or alley, or any portion thereof, shall be abandoned or vacated unless there has been filed with the council the written consent of the owners of all lots abutting on the street or alley, or the portion thereof, to be vacated.
A.C.A. § 14-301-303 (emphasis added).
The above-quoted provisions clearly provide authority and a mechanism for cities of the first or second class to narrow city streets that have not been used by the public for a period of five years. In those instances, the consent of all abutting property owners is necessary.
The statutes cited and quoted above cover the narrowing of city streets in situations involving either: (a) cities having a population of 15,000 or more; or (b) cities of the first and second class in which the street in question has not been used by the public for a period of five years.
State law does not provide a procedure or a consent requirement for the narrowing of city streets in other situations.
Question 2 — If a city council decides to take action that violates statelaw, and a citizen wants to stop the action, is it necessary for thecitizen to file a lawsuit? If so, is there a time limit for the lawsuitto be filed?
I cannot opine definitively in response to this question, because the answer will depend largely on certain factual matters that you have not indicated. Various remedies are available in situations where public officials have violated state law. The issue of which remedy might be appropriate will turn on the nature of the alleged violation. A choice of remedies can also be a strategic choice. For these reasons, it would be advisable to consult with private counsel as to this matter.
Among the remedies that are available, depending on the circumstances, are a writ of mandamus, criminal prosecution (if appropriate), and removal from office for malfeasance or non-feasance in office. The statute of limitations for pursuing these and any other available remedies will also depend upon the nature of the allegations and the remedy chosen.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh